KEY INTERNATIONAL MANUFACTURING, INC., Appellant, v MORSE/DIESEL, INC., et al., Defendants, and ALBERT MEL-NIKER et al., Respondents. (And Two Other Actions.)

Second Department, December 30, 1988

APPEARANCES OF COUNSEL

*Paul, Weiss, Rivkind, Wharton & Garrison (Lewis A. Kaplan* and *Jay L. Himes* of counsel), for appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker (Stephen M. Marcellino, Frank E. DeGrim* and *Helmut Beron* of counsel), for Albert Melniker, respondent.

*Rivkin, Radler, Dunne & Bayh (Michael S. Cohen* of counsel), for Toder/Schwartz, respondent.

**OPINION OF THE COURT**

BRACKEN, J. P.

■ ■ The plaintiff Key International Manufacturing, Inc. (hereinafter Key), a New York corporation, commenced the present action in order to recover compensation for the economic losses it suffered in connection with a construction project on Staten Island. In its complaint, Key alleged that it was forced to remedy, "at substantial cost", various design and construction defects caused by the negligence and breach of contract committed by several defendants, including the respondents Albert Melniker, an architect, and Toder/Schwartz, a professional engineering firm. The Supreme Court, finding that the respondents were not in privity of contract with Key, and holding that the absence of privity bars Key from recovering for its economic losses against the respondents, awarded summary judgment to them. On this appeal by Key, we find that issues of fact as to whether privity exists and as to whether Key may have standing to sue on a contract theory based on its status as a third-party beneficiary preclude the awarding of summary judgment.

I

■ The Supreme Court properly held, in light of controlling precedent, that the owner of a construction project may not recover compensation for economic damages caused by the negligence of an architect or engineer with whom it is not in privity of contract. This rule is analogous to the well-settled rule that the manufacturer of a product may not be held liable to a party with whom it is not in privity for economic losses suffered as a result of a defect in the product.

In the area of products liability, the majority rule, as reflected in the seminal case of *Seely v White Motor Co.* (63 Cal 2d 9, 403 P2d 145), has always been that a product owner

has no tort remedy for economic losses, as distinguished from personal injury or property damage, against a product manufacturer. An owner of a product who suffers economic loss is limited to whatever remedy the owner may have in contract. This rule has recently been embraced by the Supreme Court of the United States as an aspect of general maritime law *(see, East Riv. S. S. Corp. v Transamerica Delaval,* 476 US 858). As discussed in these cases, the rationale for this rule is based upon the perception that to allow tort recovery in the absence of privity for economic losses would virtually negate the law of warranty, as codified in the provisions of the Uniform Commercial Code. Those courts which have adopted the majority rule have done so based on "the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages" *(East Riv. S. S. Corp. v Transamerica Delaval, supra,* at 870-871; *see also, Moorman Mfg. Co. v National Tank Co.,* 91 Ill 2d 69, 435 NE2d 443). It is thought that abandonment of the doctrine of privity in cases of economic loss would cause "contract law [to] drown in a sea of tort" *(East Riv. S. S. v Transamerica Delaval, supra,* at 866).

The New York Court of Appeals has adhered to the majority view outlined above *(see, Schiavone Constr. Co. v Elgood Mayo Corp.,* 56 NY2d 667, *revg* 81 AD2d 221, on dissenting opn below). In his dissent in the *Schiavone* case *(supra),* later adopted by the Court of Appeals, Justice Silverman quoted approvingly from the language of the California Supreme Court in the *Seely* case *(supra),* as follows: " 'The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods * * *. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone' " *(Seely v White Motor Co.,* 63 Cal 2d 9, 15-18, 403 P2d 145, 149-151, *supra; Schiavone Constr. Co. v Elgood Mayo Corp.,* 81 AD2d 221, 230-231 [Silverman, J., dissenting]). Thus, the rule is settled in New York that a plaintiff has no tort cause of action, sounding in strict products liability or in negligence, for economic loss suffered as the result of a defective product; the plaintiff's sole remedy is in contract *(see also, Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 25-26; *Hole v General Motors Corp.,* 83 AD2d 715, 717).

The rule which eliminates tort liability for economic losses in the context of defective products has been applied in New

York to defective buildings as well. This is logical, since " 'there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure' " *(Inman v Binghamton Hous. Auth.,* 3 NY2d 137, 144, quoting Prosser, Torts § 85, at 517 [2d ed]; *see also, Cubito v Kreisberg,* 69 AD2d 738, 745, *affd* 51 NY2d 900).

In *Alvord & Swift v Muller Constr. Co.* (NYLJ, Sept. 15, 1976, at 7, col 4, *affd* 56 AD2d 761, *on opn of Greenfield, J., at Special Term, affd* 46 NY2d 276), a negligence action brought by a subcontractor for damages resulting from construction delays was dismissed, insofar as it was asserted against the owner's architect. One basis for dismissal was the absence of privity between the architect, whose only duty was to the owner, and the plaintiff subcontractor *(see also, Crow-Crimmins-Wolff & Munier v County of Westchester,* 90 AD2d 785, 786).

Consistent with the *Alvord & Swift* case *(supra),* this court held, in *Ossining Union Free School Dist. v Anderson LaRocca Anderson* (135 AD2d 518), that an owner of a building had no cause of action for economic injuries against a firm of engineers with whom it was not in privity. Citing *Ultramares Corp. v Touche* (255 NY 170), the court stated that "recovery will not be granted to a third person for pecuniary loss arising from the negligent representations of a professional with whom he or she has had no contractual relationship" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 520; *see also, Plancher v Gladstein,* 143 AD2d 740; *Fitzpatrick, Jr. Constr. Corp. v County of Suffolk,* 138 AD2d 446).

Also, in *Lake Placid Club Attached Lodges v Elizabethtown Bldrs.* (131 AD2d 159), the Appellate Division, Third Department, held that the plaintiff, an unincorporated joint venture which consisted of the owners of condominium units, had no negligence cause of action for economic losses against either the builder of the condominium or its architects. The court stated that the plaintiff "has not claimed any damages other than direct and consequential nonaccidental economic loss, i.e., the cost of repair to make the condominium units of * * * habitable quality and loss of market value, for which there is no recovery in negligence" *(Lake Placid Club Attached Lodges v Elizabethtown Bldrs., supra,* at 162, citing *Butler v Caldwell & Cook,* 122 AD2d 559; *Burnell v Morning Star Homes,* 114 AD2d 657, 659; *Hemming v Certainteed Corp.,* 97 AD2d 976, *appeal dismissed* 61 NY2d 758; *Queensbury Union Free School*

*Dist. v Walter Corp.*, 94 AD2d 834; *Schiavone Constr. Co. v Elgood Mayo Corp.*, 81 AD2d 221, 227-234 [Silverman, J., dissenting], *revd on dissenting opn* 56 NY2d 667). The court also held that the plaintiff had no remedy in contract, since there was no privity between it or its members and either the builder or the architect *(Lake Placid Club Attached Lodges v Elizabethtown Bldrs., supra,* at 161-162).

Thus, the rule which bars recovery for economic losses in the absence of privity as applied to actions against architects or engineers is also settled as a matter of New York law. We note that analogous rules apply in actions against other professionals as well *(see, Viscardi v Lerner,* 125 AD2d 662, 663-664 [attorneys]; *Calamari v Grace,* 98 AD2d 74 [title insurers]; *cf., Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536 [accountants]). The Supreme Court therefore properly held in this case that in the absence of privity of contract, the respondents would be immune from liability for the pecuniary injuries suffered by Key. However, issues of fact exist with respect to whether Key may properly be considered to be in privity with the respondents and, for this reason, the award of summary judgment to them was unwarranted.

## II

Key was not a named party to any written contract with the respondents. However, the respondents did enter into written contracts with a wholly owned subsidiary of Key, i.e., Key Land Development Corporation (hereinafter Key Land). Christopher Jeffries, an officer of both Key and Key Land, stated that the latter corporation's activities in connection with the project were "at the direction of, and under the control of, Key, the property's owner". Jeffries also averred that he had informed the respondents that in executing contracts with them, he was "acting on behalf of the owner, which was Key". These assertions by Jeffries, contained in his affidavit in opposition to the respondents' motions for summary judgment, indicate the existence of an issue of fact as to whether Key Land acted as an agent for Key and, if so, whether that agency relationship was disclosed.

The respondents do not dispute the general rule that "a principal [e.g., Key] is liable on contracts entered into on its behalf by an authorized agent [e.g., Key Land]" *(Plymouth Rock Fuel Corp. v Leucadia, Inc.,* 100 AD2d 842; *see also,* Restatement [Second] of Agency § 292; 3 NY Jur 2d, Agency, § 247). Nor do the respondents argue against the validity of

the general rule that "a subsidiary may become an agent for the corporation which controls it" (Restatement [Second] of Agency § 14 M, at 79; Annotation, *Liability of Corporation for Contracts of Subsidiary,* 38 ALR3d 1102; *see also, Rapid Tr. Subway Constr. Co. v City of New York,* 259 NY 472; *Berkey v Third Ave. Ry. Co.,* 244 NY 84, 94-95; *Fiur Co. v Ataka & Co.,* 71 AD2d 370; *Astrocom Elecs. v Lafayette Radio Elecs. Corp.,* 63 AD2d 765; *Lowendahl v Baltimore & Ohio R. R. Co.,* 247 App Div 144, *affd* 272 NY 360).

Essentially, the respondents take the position that if they had a grievance against Key, they would be precluded from obtaining redress because the "corporate veil" would shield Key from any liability, unless they offered evidence sufficient to "pierce" that "veil". The respondents then proceed to argue that where the tables are turned, and where it is Key which seeks to impose liability against them, the burden falls upon Key to offer sufficient proof to establish, as a matter of law, that Key Land was merely a "dummy" or "shell" corporation. The respondents argue that this burden was not met.

The respondents may, in fact, be correct in arguing that if Key is to ultimately succeed in this action on an agency theory, it will have to prove that Key Land was the agent of Key, so that the former corporation acted under the direction of the latter. Several factors may ultimately be considered by the trier of fact in making this determination *(see, e.g., World-wide Carriers v Aris S. S. Co.,* 301 F Supp 64; *see also,* Annotation, *Liability of Corporation for Contracts of Subsidiary,* 38 ALR3d 1102). However, the respondents are incorrect in arguing that Key had a burden to prove its principal-agent relationship with Key Land in order to resist the awarding of summary judgment. Key's only burden in connection with the summary judgment motion was to indicate the existence of an issue of fact in this regard; it had no obligation to submit evidence sufficient to warrant a finding, as a matter of law, that it had an agency relationship with Key Land. Whether a principal-agent relationship exists between two corporations is a question of fact to be decided at trial, rather than by way of motion for summary judgment *(see, e.g., Fiur Co. v Ataka & Co., supra,* at 373; *Astrocom Elecs. v Lafayette Radio Elecs. Corp., supra,* at 766).

## III

■ The awarding of summary judgment to the respondents

was unwarranted for the additional reason that triable issues of fact exist as to whether Key may sue to enforce the contracts between Key Land and the respondents based on its status as a third-party beneficiary.

"[I]t is the intention of the promisee which is of primary importance in ascertaining whether a party is to be considered an intended beneficiary" *(Goodman-Marks Assocs. v Westbury Post Assocs.,* 70 AD2d 145, 148, citing *Fosmire v National Sur. Co.,* 229 NY 44; *Graybar Elec. Co. v Seabord Sur. Co.,* 157 Misc 275; *McCulloch v Canadian Pac. Ry. Co.,* 53 F Supp 534; Restatement of Contracts § 133 [1] [a], [b]; 2 Williston, Contracts § 356A [3d ed 1959]). In the present case, the promisee (Key Land), by its officer Jeffries, unequivocally stated that Key Land intended that its contracts with the respondents would benefit Key. This is one factor which tends to support a finding that Key may enforce Key Land's contracts as a third-party beneficiary.

"Where performance is to be made directly to a third party, that party is generally deemed an intended beneficiary of the contract and is entitled to enforce it or there is, at least, a presumption that the contract was for the benefit of the third party" *(Nepco Forged Prods. v Consolidated Edison Co.,* 99 AD2d 508, citing *Goodman-Marks Assocs. v Westbury Post Assocs., supra; Drake v Drake,* 89 AD2d 207). In the present case, the performance by the promisors (the respondents) was manifestly to be to the direct benefit of the owner of the development. It is almost inconceivable that those professional engineers or architects who render their services in connection with a major construction project would not contemplate that the performance of their contractual obligations would ultimately benefit the owner of that development. That they might not have known the exact name or form of the business entity which owned the land to be developed is immaterial; it is obviously inferrable that they knew, or should have known, that someone owned the development, and that such person or entity was to be the ultimate beneficiary of their professional services. This is a further factor tending to support Key's claim as to third-party beneficiary status.

The respondents argue, in essence, that the holding of *Port Chester Elec. Constr. Corp. v Atlas* (40 NY2d 652) precludes consideration of Key as a third-party beneficiary. In the *Port Chester* case, the court held that an electrical subcontractor was not to be deemed a third-party beneficiary of the contract between the owner of a certain development and its general

contractor, and could not therefore enforce the owner's promise to reimburse the general contractor for all payments made to the subcontractors. Unlike the scenario presented in the instant case, there is no indication in the *Port Chester* case that the promisee (the general contractor) admitted that it intended its contract with the promisor (the owner) to benefit the third party (the subcontractor). On the contrary, the court concluded, based on the record before it, that neither the promisor (the owner) nor the promisee (the general contractor) intended their contract to benefit the claimed third-party beneficiary (the subcontractor) *(Port Chester Elec. Constr. Corp. v Atlas, supra,* at 656).

The facts of the case of *Fourth Ocean Putnam Corp. v Interstate Wrecking Co.* (108 AD2d 3, *affd* 66 NY2d 38) are distinguishable for the same reason. In that case, the promisor (a contractor) agreed with the promisee (a village) to remove a certain dilapidated structure which had become a nuisance and whose demolition had been ordered by the Supreme Court *(Fourth Ocean Putnam Corp. v Interstate Wrecking Co., supra,* 108 AD2d, at 4-5). Once again, unlike the situation in the present case, there is no indication that either the promisor (the contractor) or the promisee (the village) intended the performance of their contract to confer any benefit on the plaintiff landowner. The Court of Appeals affirmed the award of summary judgment dismissing the complaint based upon a finding that the contract was intended to confer a benefit on the public (i.e., the removal of a dangerous structure), and not upon the alleged third-party beneficiary.

The case of *Lake Placid Club Attached Lodges v Elizabethtown Bldrs.* (131 AD2d 159, *supra)* is also distinguishable on this basis. In that case, the promisee (a developer) entered into contracts with a builder and an architectural firm (promisors). As noted above, the Appellate Division, Third Department, held that the ultimate owners of the condominium units had no cause of action for economic loss against the parties with whom they were not in privity. The court also refused to impose liability based upon a third-party beneficiary theory, because there was no evidence that the promisee-developer had any intent to benefit the condominium owners *(Lake Placid Club Attached Lodges v Elizabethtown Bldrs., supra,* at 161-162). In the present case, the promisee Key Land, by its agent Jeffries, expressly stated that it intended to benefit Key.

Although there is dicta in *Port Chester Elec. Constr. Corp. v Atlas (supra,* at 656) to the effect that "[g]enerally * * * the

ordinary construction contract * * * does not give third parties who contract with the promisee the right to enforce the latter's contract with another", we do not believe that the Court of Appeals meant to announce a rule of law that, in respect to construction projects, only those parties who are specifically mentioned in a contract as intended beneficiaries may sue to enforce it. Such a rule of law, limiting third-party beneficiary status to those parties specifically mentioned in a contract, whether it be a construction contract or otherwise, would, in our opinion, run contrary to binding precedent (see, e.g., Newin Corp. v Hartford Acc. & Indem. Co., 37 NY2d 211, 218-219; McClare v Massachusetts Bonding & Ins. Co., 266 NY 371). It would also be contrary to the decision of Fourth Ocean Putnam Corp. v Interstate Wrecking Co. (66 NY2d 38, 45, supra), in which the court indicated that express reference to an intended beneficiary in a contract is but an alternative factor upon which a court might base a finding that a certain party is, in fact, a third-party beneficiary.

For the foregoing reasons, summary judgment was improperly granted to the respondents.

## IV

Key also applied for leave to serve an amended complaint in order to name Key Land as an additional party plaintiff. There is no dispute that Key Land may properly be joined pursuant to the permissive joinder provisions of CPLR 1002 (a). The respondents argue, however, that any claim to be asserted by Key Land based on allegations of negligence would be time barred pursuant to the applicable Statute of Limitations (CPLR 214 [4]); Key responds by arguing that any claim to be asserted by Key Land based on allegations of negligence should be deemed to have been interposed at the time that Key's original claims were interposed, pursuant to CPLR 203 (e), so that no valid Statute of Limitations defense exists.

Pursuant to CPLR 203 (e), a "claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading". Since it cannot be realistically argued by the respondents that Key's original complaint did not give notice to them of the transactions upon which Key Land's claims will be based, they argue, in essence,

that the relation-back provisions of CPLR 203 (e) do not apply to a claim which is to be asserted by a newly added party.

█ The persuasiveness of this argument is vitiated by the holdings of the Court of Appeals in *Duffy v Horton Mem. Hosp.* (66 NY2d 473) and of this court in *Cucuzza v Vaccaro* (109 AD2d 101, *affd* 67 NY2d 825). In those cases, it was held that a direct claim by a plaintiff in a personal injury action against a third-party defendant will be deemed to have been interposed at the time that the defendant third-party plaintiff interposed its claim for contribution or indemnification. In such a case, the third-party defendant finds itself sued by an additional party, based on a different theory, and is nevertheless deprived of a Statute of Limitations defense by operation of CPLR 203 (e). No logical reason appears why the respondents in this case should fare any better.

The Appellate Division, First Department, has squarely held that when a new party plaintiff is joined in order to allow it to assert a claim on its behalf, its claim will be deemed to have been interposed as of the time of the interposition by the preexisting plaintiff of its similar or identical claim *(Schleidt v Stamler,* 106 AD2d 264). In the *Schleidt* case, an individual plaintiff brought a malpractice action against an attorney just before the expiration of the Statute of Limitations *(Schleidt v Stamler, supra,* at 265). A motion to dismiss the complaint was granted by the Supreme Court upon the basis that it was not the individual plaintiff, but rather a closely held corporation, in which the plaintiff was a shareholder, which had suffered economic loss as a result of the alleged malpractice *(Schleidt v Stamler, supra,* at 265). The Appellate Division reversed the order and directed the joinder of the proper party plaintiff, holding that the corporate plaintiff's claim would be deemed to have been interposed at the time that the identical cause of action had been interposed by the individual shareholder *(see also, Allied Bank v Fireman's Fund Ins. Co.,* 137 Misc 2d 721 [claim of one banking corporation joined as additional party relates back to claim asserted by related corporation]; *Rivera v St. Luke's Hosp.,* 102 Misc 2d 727 [claim by father for loss of services of injured son relates back to claim for personal injuries asserted by father as representative of son]). We believe that the holding of the Appellate Division, First Department, in the *Schleidt* case *(supra)* is supported by the plain terms of CPLR 203 (e) and is correct.

We emphasize, however, that the rule permitting the claim of a newly joined plaintiff to relate back to the earlier claim of

a preexisting plaintiff does not necessarily extend beyond those situations, such as this case, where the substance of the claims of the newly joined plaintiff and those of existing plaintiff are virtually identical, where the ad damnum clause is thus the same in the proposed amended complaint as in the original complaint, and where the newly joined plaintiff is closely related to the original plaintiff. We do not suggest that an entirely separate plaintiff may be joined in a pending action, in order to assert an otherwise time-barred claim pursuant to the relation-back provisions of CPLR 203 (e) where to do so would increase the measure of liability to which the defendants are exposed (cf., Rivera v St. Luke's Hosp., supra). Thus, the respondents may have a viable Statute of Limitations defense to the extent that Key Land attempts, at trial, to prove damages which it may have suffered independently of the damages suffered by Key. We need not pass on this issue unless and until Key Land attempts to impose liability on the respondents for damages which were incurred by it, rather than by Key. For this reason, while leave to amend the complaint so as to add Key Land as an additional plaintiff should be granted, this is without prejudice to the assertion by the respondents in their answer to the amended complaint of Statute of Limitations defenses with respect to any new claims asserted by Key Land on its own behalf.

### V

In conclusion, the order under review is reversed insofar as appealed from. The motions of Toder/Schwartz and Melniker for summary judgment dismissing the complaint insofar as it is asserted against them are denied. Key's cross motion for leave to serve an amended complaint adding Key Land as an additional party plaintiff is granted in its entirety, without prejudice to the assertion by the respondents of defenses based on the Statute of Limitations as against the newly joined plaintiff Key Land.

KUNZEMAN, RUBIN and SPATT, JJ., concur.

Ordered that the order is reversed insofar as appealed from, with costs, the motions of the respondents are denied, and the plaintiff's motion for leave to serve an amended complaint is granted in its entirety, without prejudice to the assertion by the respondents of defenses based upon the Statute of Limitations as against the newly joined plaintiff Key Land.